# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**ROY E. BOGGS,** *an individual, and*  )
**ANETTE BOGGS**, *his wife*  )
  )
      Plaintiffs,  )
  )
      v.  )      Civ. No.  16-971
  )
**DARWIN D. HARRIS,** *an individual, and*  )
**GETAWAY TOURS, INC.**  )
  )
      Defendants.  )
  )

# <u>OPINION</u>

C<small>ONTI</small>, Chief District Judge

## I.     Introduction

Pending before the court is a motion to remand filed by plaintiffs Roy Boggs and Annette Boggs  ("plaintiffs"). (ECF No. 5.) On June 28, 2016, Defendants Darwin Harris ("Harris") and Gateway Tours, Inc.   ("Getaway Tours") (together "removing defendants") removed this case to this court based upon diversity of citizenship, after the only nondiverse defendant in the state action was voluntarily dismissed. (ECF No. 1.)

Plaintiffs argue that the case should be remanded because removing defendants waived their right to remove, or, in the alternative, because they did not file the notice of removal within the thirty-day time limit under 28 U.S.C. § 1446(b). As set forth below, the court finds that removing defendants did not waive their right to remove, but that

removing defendants did file an untimely notice of removal. For this reason, plaintiffs' motion to remand will be granted.

## II.     Procedural History

On September 29, 2015, plaintiffs filed a complaint in the Court of Common Pleas of Beaver County against defendants Harris, Gateway Tours, and Conley-Beaver Corporation ("Conley-Beaver"). (ECF No. 1). Harris and Getaway Tours filed a timely answer and asserted a cross-claim against Conley-Beaver. (Id.)

Plaintiffs are citizens of Pennsylvania. (Id. ¶ 2.) Removing defendants Harris and Getaway Tours are citizens of Michigan. (Id. ¶ 4-5.) Defendant Conley-Beaver is a resident of Pennsylvania. (Id. ¶ 3.) The inclusion of Conley-Beaver as a defendant at the commencement of this action precluded the filing of a federal lawsuit based upon diversity of citizenship.

On May 17, 2016, counsel for plaintiffs informed counsel for Conley-Beaver that plaintiffs had agreed to dismiss Conley-Beaver from this action upon consent from Harris and Getaway Tours. (ECF No. 5 ¶ 15.) On May 18, 2016, Harris and Getaway Tours consented to the discontinuance of Conley-Beaver via email correspondence sent to counsel for plaintiffs and counsel for Conley-Beaver. (Id. ¶ 16.)[1] On May 18, 2016, Conley-Beaver sent email correspondence to counsel for plaintiffs confirming Harris's and Getaway Tours' consent to the discontinuance of Conley-Beaver, and requesting that plaintiffs prepare a stipulation of discontinuance of Conley-Beaver. (Id. ¶ 17.)

---

[1] All parties agreed at the hearing that this consent would result in the dismissal of the cross-claim, which was filed by removing defendants against Conley-Beaver.

One May 23, 2016, plaintiffs forwarded all defendants a stipulation for discontinuance of Conley-Beaver for signature. (Id. ¶ 18.) On May 31, 2016, all defendants supplied plaintiffs with executed counterparts of the stipulation for discontinuance. (Id. ¶ 19.) On June 15, 2016, plaintiffs filed the fully executed stipulation with the state court. (Id.)

On June 28, 2016, Harris and Gateway Tours filed a notice of removal on the basis of diversity jurisdiction. (Id.)

Since learning on May 17, 2016, about plaintiffs' intent to dismiss Conley-Beaver from this action, defendants Harris and Getaway Tours engaged in the following discovery:

- May 18, 2016, scheduled the independent medical exam ("IME") for Roy Boggs;

- May 20, 2016, inquired about dates to conduct a vocational interview of Mr. Boggs;

- June 8, 2016, completed the vocational interview;

- June 10, 2016, conducted Mr. Boggs' IME;

- June 14, 2016, deposed plaintiffs;

- June 27, 2016, deposed an administrator from Mr. Boggs' place of employment; and

- June 27, 2016, provided notice that a motion to compel would be presented to the Beaver County Court on June 30, 2016. (ECF No. 5 ¶ 12.)

On July 19, 2016, plaintiffs filed a motion to remand this matter to state court and a brief in support of the motion. (ECF Nos. 5, 6.) On August 9, 2016, the removing defendants filed a response in opposition to the motion for remand and a brief in support of the response. (ECF Nos. 10, 11.)

A hearing on plaintiffs' motion for remand was held before this court on September 20, 2016. (Minute Entry 9/20/2016.) At that time the court, upon joint request from the parties, permitted both parties to submit supplemental briefing on the narrow question whether a voluntary discontinuance of a defendant via stipulation is analogous to a settlement agreement for the purpose of determining when the thirty-day removal period provided under 28 U.S.C. § 1446(b) commenced. (Id.) The motion is now fully briefed and ripe for disposition.

## III.   Statement of Facts

Plaintiff Roy Boggs asserts a negligence claim against Harris and Getaway Tours. Plaintiff Annette Boggs asserts a loss of consortium claim against Harris and Getaway Tours. Plaintiffs allege in the complaint that:

- on December 26, 2013, Mr. Boggs was operating his vehicle on State Route 18 (ECF No. 1 ¶ 11);

- at approximately 10:39 p.m., Harris, who was operating a bus owned by Getaway Tours, exited a commercial plaza owned by Conley-Beaver (id. ¶ 11-12);

- Darwin Harris negligently crossed over the south bound lane of Route 18 directly into Mr. Boggs' path, resulting in a collision (id. ¶ 12); and

- Mr. Boggs suffered numerous and severe injuries as a result of the collision (id.).

## IV.   Discussion

28 U.S.C. § 1441(a) authorizes a defendant to remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." The district courts have original jurisdiction over diversity actions

"where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States." 28 U.S.C. § 1332(a).[2]

A defendant seeking removal of an action must file a petition for removal with the district court within thirty days of the plaintiff's service of the complaint upon the defendant or within thirty days of receipt of a copy of an amended pleading, motion, order, or other paper from which the defendant may first ascertain that the case has become removable. 28 U.S.C. § 1446(b). "[T]he burden of establishing removal jurisdiction rests with the defendant." Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 359 (3d Cir. 1995). It is the burden of the party seeking to preserve the district court's jurisdiction, typically the defendant, to show that the requirements for removal have been met. Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214 (3d Cir. 1999); Bell Atlantic Mobile, Inc. v. Zoning Bd. of Butler Tp., 138 F.Supp.2d 668 (W.D. Pa. 2001) (noting that defendant bears the burden of proving that removal was proper).

"Once an action is removed, a plaintiff may challenge removal by moving to remand the case back to state court." McGuire v. Safeware, Inc., Civ. Action No. 13-3746, 2013 WL 5272767, at * 1 (E.D. Pa. Sept. 17, 2013) (citing Cook v. Soft Sheen Carson, Inc., Civ. Action No. 08-1542, 2008 WL 4606305, at*1 (D.N.J. Oct. 15, 2008)). "Cases may be remanded under § 1447(c) for (1) lack of district court subject matter jurisdiction or (2) a defect in the removal procedure." PAS v. Travelers Ins. Co.,7 F.3d 349, 352 (3d Cir. 1993).[3] "It is settled that the removal statutes are to be strictly

---

[2] The parties do not contest that there is complete diversity between the remaining parties and that the amount in controversy is in excess of $75,000.

[3]      The decision to enter a remand order on the basis of a defect in removal procedure or for a lack of subject matter jurisdiction is within the discretion of the district court, and, whether erroneous or not, is not subject to appeal. Cook, 320 F.3d at 437 (citing

construed against removal and all doubts should be resolved in favor of remand." <u>Steel Valley Auth. v. Union Switch and Signal Div.</u>, 809 F.2d 1006, 1010 (3d Cir.1987) (footnote omitted).

Here, plaintiffs make two arguments in favor of remand:

1) *removing defendants' removal was untimely, because it did not comply with 28 U.S.C. § 1446(b); and*

2) *removing defendants waived the right to remove, because they invoked the jurisdiction of the state court and demonstrated a "clear and unequivocal" intent to litigate in state court.*

Plaintiffs' first argument raises a difficult legal question given the existence of conflicting case law with respect to when the thirty-day removal period begins under 28 U.S.C. § 1446(b). If this court were to determine that removing defendants waived the right to removal, this court would be able to resolve this matter without addressing the question whether removing defendants' notice of removal was timely filed. This court will, therefore, first address plaintiffs' second argument regarding defendants' alleged waiver.

## A. Defendants' waiver of the right to remove

Plaintiffs argue that removing defendants waived their right to remove by demonstrating the intent to litigate in state court. In litigation, a defendant's waiver of removal rights must be "clear and unequivocal." <u>Foster v. Chesapeake Ins. Co., Ltd.</u>, 933

---

<u>Quackenbush</u>, 517 U.S. at 711-12). The United States Supreme Court has noted that limiting review of remand orders supports "Congress's longstanding policy of not permitting interruption of the litigation of the merits of a removed case." <u>Powerex Corp. v. Reliant Energy Svcs., Inc.</u>, 551 U.S. 224, 238 (2007).

<u>A.R. v. Norris</u>, Civ. Action No. 15-1780, 2015 WL 6951872, at *2 (M.D. Pa. Nov. 10, 2015).

F.2d 1207, 1218 n.15 (3d Cir. 1991). ("In the context of litigation-based waiver, the 'clear and unequivocal' standard makes sense. Otherwise, in order not to waive the right to remove defendants would have to remain inactive in the state court, running the peril of being held in default should a remand from the district court later occur.").[4]

The Third Circuit Court of Appeals has not specifically addressed what constitutes a "clear and unequivocal" waiver of the right to remove; however, courts typically find that a defendant has waived his right to remove a case under one of two scenarios. First, a defendant waives his right to remove when he "attempts to experiment with the merits of his case in state court and then use removal to get a second chance or 'alternative appeal' route in federal court." Haun v. Retail Credit Co., 420 F. Supp. 859, 863 (W.D. Pa. 1976) (citing Rosenthal v. Coates, 148 U.S. 142, 147 (1893); see Sacko v. Greyhound Lines, Inc., Civ. Action No. 13-1966, 2013 WL 2892906 at *2-3 (E.D. Pa. May 31, 2013) ("[W]aiver may be found where a defendant experiments with the merits of the case in state court and then seeks to remove the case to federal court, often after receiving an adverse decision.").

Alternatively, a court may find that a defendant has waived his right to remove a case to federal court where the defendant takes an affirmative action evincing an intent to remain in state court. Mancari, 683 F. Supp. at 94 ("In almost all of the cases where waiver has been found, the courts have concluded that the defendant manifested an intention to remain in state court by either asserting its rights in the court or by some other affirmative action taken in the state forum."); Rockwell v. U. S. Fid. & Guar. Co.,

---

[4] "The court of appeals in Foster rejected the argument that contractual waivers of § 1441(a) removal rights must be 'clear and unequivocal.'" Suter v. Munich Reinsurance Co., 223 F.3d 150, 156 (3d Cir. 2000). Here, plaintiffs do not argue that removing defendants waived their removal rights based upon a contractual waiver.

137 F. Supp. 317, 319 (M.D. Pa. 1955) ("The action relied upon [as a waiver] must be inconsistent with a purpose to pursue the right to remove and clearly indicate an intention to submit to the jurisdiction of the state court."). "The right to remove may also be waived if a defendant takes substantial defensive action in state court before petitioning for removal." Bryfogle v. Carvel Corp., 666 F. Supp. 730, 733 (E.D. Pa. 1987).

Under this second scenario, a court will examine the actions taken by the defendant in state court to determine whether they are substantial and demonstrate an intent to litigate in state court. "The majority of courts seem to have held that preliminary conduct by a defendant short of his actual litigation of the merits or his voluntary invocation of state court jurisdiction for his own purposes does not constitute a waiver of his right to remove." Haun, 420 F. Supp. at 863; Selvaggi v. Prudential Prop. & Cas. Ins. Co., 871 F. Supp. 815, 818 (E.D. Pa. 1995) ("courts generally have held that the right to remove is maintained where there has been no litigation on the merits and no prejudice to any of the parties").

District courts within the Third Circuit have found that most actions taken by a defendant prior to removal do not constitute a "clear and unequivocal" waiver of the right to remove. "District courts in our Circuit have found that waiver has not been established when defendants attend and participate in a scheduling conference, file preliminary objections, file a praecipe to file a complaint and a praecipe for judgment of non pros, and file an answer." Cognetx, Inc. v. Haughton, No. 10-2293, 2010 WL 3370761, at *6 (E.D. Pa. Aug. 26, 2010). District courts have found that conducting discovery does not automatically constitute a waiver, particularly when the parties are in the early stages of discovery. Id.; Cook v. Soft Sheen Carson, Inc., Civ. Action No. 08-

1542, 2008 WL 4606305, at *4 (D.N.J. Oct. 15, 2008); 14C Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 3731 (4th ed. 2009) ("A defendant's conduct in defending the state court action prior to the end of the two statutory thirty-day periods established by Section 1446(b) will not constitute a waiver of the right to remove.").

Courts also closely consider the timing of the defendant's conduct. "It is clear that the stage the case is in should be and is crucial when analyzing whether there has been a waiver of the right to remove. For example, filing a pleading in the early stages of litigation may not be as clear and unequivocable an act as continuing to present evidence in a trial." <u>Mancari</u>, 683 F. Supp. at 94–95; <u>Selvaggi</u>, 871 F. Supp. at 817 ("pleadings that are filed early in the proceedings are rarely construed as clear waivers of the right to remove.").

Other circuit courts of appeals have gone so far as to hold that the right to remove cannot be waived prior to the right existing. <u>Akin v. Ashland Chemical Co.</u>, 156 F.3d 1030, 1036 (10th Cir. 1998) (where the "actions in state court by defendant . . . were taken before it was unequivocally apparent that the case was removable," they do not constitute waiver of the right to remove); <u>McKnight v. Illinois Cent. R.R.</u>, 967 F.Supp. 182, 186 (E.D. La. 1997) ("[t]he right to remove a case to federal court may be waived by acts taken in the state court, subsequent to the creation of the right to remove."); <u>Fain v. Biltmore Securities, Inc.</u>, 166 F.R.D. 39, 40 (M.D. Ala. 1996) (same).

Finally, courts have refused to find a waiver when the defendant's participation in the state action was dictated by the rules of the state court or where the defendant's failure to act would prejudice him in the state proceedings. <u>Haun</u>, 420 F.Supp. at 859

(finding that a defendant's actions could not be construed as a waiver of the right to remove where the defendant took these actions to protect himself from default in state court).

Plaintiffs in this case argue that removing defendants waived their right to remove by demonstrating a "clear and unequivocal" intent to litigate in state court. Plaintiffs cite four actions, which they allege demonstrate this intent:

1) *removing defendants, Harris and Getaway Tours, filed a cross-claim against the nondiverse defendant, Conley-Beaver, at the beginning of the state action;*

2) *removing defendants engaged in discovery after the case became removable;*

3) *removing defendants engaged in alternative dispute resolution (ADR), including proposals to participate in a high/low non-jury trial in Beaver County state court, after the case became removable; and*

4) *removing defendants continue to participate in a related state court action against them involving property damage claims.*

Plaintiffs also argue that this case should be remanded on the ground that removing the matter to federal court will invite significant delay and expense.

### 1.     Removing defendants' cross-claim

Plaintiffs argue that removing defendants waived their right to remove when they filed a cross-claim against co-defendant Conley-Beaver. Removing defendants respond that such cross-claims are routinely filed to preserve defenses and claims, and that the instant cross-claim should not be perceived as evidence that they clearly and unequivocally intended to waive their right to remove.

As established in *Haun*, a defendant can waive his right to remove through "voluntary invocation of state court jurisdiction for his own purposes." Haun, 420 F. Supp. at 863. Here, the question is whether filing a cross-claim is a voluntary invocation of state court jurisdiction.

The Third Circuit Court of Appeals has not spoken on this matter, and other circuits are split about whether a voluntary cross-claim demonstrates a "clear and unequivocal" intent to litigate in state court. Plaintiffs cite Sood v. Advanced Computer Techniques, 308 F. Supp. 239, 241 (E.D. Va. 1969), to support their contention that a defendant waives his right to remove when he files a voluntary cross-claim in state court. In Sood, the district court held that "the defendant, by filing its plea in abatement and its cross-action in the State Court, waived its right to remove the case to this Court" as the defendant "voluntarily invoke[d] the jurisdiction of the state court by seeking its affirmative aid in his behalf." Sood, 308 F. Supp. at 241; *see* Acosta v. Direct Merchants Bank, 207 F. Supp. 2d 1129, 1133 (S.D. Cal. 2002) (the defendant affirmatively waived removal rights by filing a voluntary cross-claim); Paris v. Affleck, 431 F. Supp. 878, 880 (M.D. Fla. 1977) (same); Briggs v. Miami Window Corp., 158 F. Supp. 229, 230 (M.D. Ga. 1956) (same).

While plaintiffs would like the court to broadly adopt the reasoning of the district court in Sood to find that a cross-claim "voluntarily invokes the jurisdiction of the state court," Sood, 308 F. Supp. at 241, this court is hesitant to find that all permissive cross-claims constitute waivers of the right to remove. Sood lays out a rigid requirement, which forces a defendant to speculate about the likelihood a nonremovable case will later become removable when making preliminary procedural decisions. Adopting this

approach would place defendants in precarious positions; they would have to weigh the value of asserting potentially viable claims against the possibility that the case may become removable at some point in the future. This court is not inclined to require defendants to engage in this sort of conjecture, particularly at the outset of litigation, and concludes that the fact-based approach laid out by the Seventh Circuit Court of Appeals in Rothner v. City of Chicago, 879 F.2d 1402, 1414–1416 (7th Cir. 1989), and later adopted by the Fourth Circuit Court of Appeals in Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991), is more persuasive on this matter.

In Rothner, the Seventh Circuit Court of Appeals examined the role of the waiver doctrine following the adoption of 28 U.S.C. § 1446(b). The court found that as a general matter the 1948 revisions to the statutory scheme, which included the adoption of § 1446(b), "seemed to obviate the need of courts to resort to judicial rules concerning waiver." Rothner v, 879 F.2d at 1414. Rothner, however, recognized that the waiver doctrine is "entrenched in the lower courts," and that district courts do retain the "power to remand in extreme situations." Id. at 1416. Under the approach set out in Rothner, "a waiver determination involves a factual and objective inquiry as to the defendant's intent to waive" and should only be found in rare and extreme circumstances. Id. at 1408.

The Fourth Circuit Court of Appeals likewise adopted this approach, stating:

> We are persuaded by this reasoning, and adopt Rothner's holding that although a defendant may yet waive its thirty-day right to removal by demonstrating a "clear and unequivocal" intent to remain in state court, such a waiver should only be found in "extreme situations." [5]

---

[5] While the Third Circuit Court of Appeals has not explicitly adopted this approach, the court of appeals did cite Grubb when determining that a defendant who had asserted claims for indemnification and

Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991). Extreme situations befitting waiver may include a case that has already been fully litigated on the merits in state court, Rothner, 879 F.2d at 1416; a case in which the defendant takes "substantial affirmative steps in the state court after the [nondiverse defendants are] dismissed," Grubb, 935 F.2d at 59; or a case where the defendant removes only after "test[ing] the waters in state court." Small v. Ramsey, Civ. Action No. 1:10-121, 2010 WL 4394084, at *4 (N.D.W. Va. Nov. 1, 2010).

Here, removing defendants' decision to file a permissive cross-claim against Conley-Beaver does not rise to the "extreme" level described in Rothner and Grubb. Removing defendants' decision to file a cross-claim was a defensive strategy. Antol v. Esposto, 100 F.3d 1111, 1115 n.1 (3d Cir. 1996), amended, (3d Cir. Jan. 20, 1997) ("[Defendant's] pleading appears to be defensive in nature and we do not consider it to be such a substantial affirmative step as to bar removal."). Removing defendants' cross-claim was also filed early in the litigation, well before any party had reason to suspect that the case may become removable. Selvaggi, 871 F. Supp. at 817 ("pleadings that are filed early in the proceedings are rarely construed as clear waivers of the right to remove."). Removing defendants' cross-claim does not rise to the level of an "extreme situation" as required under Rothner. As a result, the filing of a cross-claim by removing defendants does not constitute a bar to removal.

---

contribution did not take "substantial affirmative steps" that would constitute a bar to removal. Antol v. Esposto, 100 F.3d 1111, 1115 n.1 (3d Cir. 1996), amended, (3d Cir. Jan. 20, 1997).

## 2.     Removing defendants' discovery activities

Plaintiffs argue that removing defendants conducted extensive discovery, and in particular, that removing defendants continued to engage in discovery after the case became removable. The discovery activities cited by plaintiffs include scheduling, conducting interviews, and deposing parties. Plaintiffs contend that by engaging in these activities after the case became removable removing defendants manifested an intent to remain in state court, thus, waiving their right to remove. Removing defendants argue that they were required to engage in discovery in order to defend themselves in the state court action, and that if they had ceased all discovery activities upon ascertaining that the case had become removable they would have been in violation of the state court's orders and rules of procedure.

District courts within the Third Circuit have explicitly held that a defendant's discovery activities do not necessarily evince a "clear and unequivocal" intent to waive the right to remove. Cook, WL 4606305, at *4 ("conducting discovery will not automatically bar the removal of an action."); Cognetx, Inc., 2010 WL 3370761, at *6 (finding that defendants who had only recently begun discovery had not displayed a "clear and unequivocal" intent to waive the right to remove).

Here, removing defendants engaged in limited discovery after the case became removable on May 23, 2016, and no discovery after they filed the notice of removal. The discovery conducted after May 23, 2016, was done in accordance with a case management order entered by the state court, setting a discovery deadline of June 30, 2016, for removing defendants.

In *Foster v. Chesapeake Insurance Co., Ltd.* the Third Circuit Court of Appeals adopted the "clear and unequivocal" test to avoid the very concern removing defendants raise. *Foster*, 933 F.2d at 1218 n.15 ("In the context of litigation-based waiver, the 'clear and unequivocal' standard makes sense. Otherwise, in order not to waive the right to remove defendants would have to remain inactive in the state court, running the peril of being held in default should a remand from the district court later occur."). In *Haun*, the court determined that a defendant who wishes to adequately protect himself in state court, may have to engage in state court activities at the same time that he files a removal petition, and that for a court to consider this state court activity "as a waiver of removal would create hardships for the defendant." *Haun*, 420 F. Supp. at 863. Given the court's decision in *Haun* and the impending discovery deadline set by the state court, Harris's and Getaway Tours' contention that they would have been unduly harmed had they discontinued all discovery activities is particularly persuasive.

Because removing defendants appear to have engaged in only a limited amount of discovery, as was necessary to protect their defenses in state court, their discovery activities do not constitute a "clear and unequivocal" waiver of their right to remove.

### 3.  Removing defendants' ADR activities

Plaintiffs contend that removing defendants evinced a "clear and unequivocal" intent to litigate in state court by continuing to engage in ADR activities, specifically discussions regarding a "binding high/low nonjury trial," after the case became removable.

While it does not appear that courts within the Third Circuit have specifically addressed whether engaging in ADR or settlement negotiations demonstrates a "clear and unequivocal" intent to litigate in state court, it is unlikely that those activities rise to this level. Engaging in ADR or settlement discussions seems more akin to a preliminary action, like filing an answer, engaging in discovery, or scheduling a conference, *see* Cognetx, Inc., 2010 WL 3370761, at *6, than to litigating a case on its merits. Haun, 420 F. Supp. at 863. In engaging in discussions regarding a "binding high/low nonjury trial," removing defendants in this case do not seem to have taken a "substantial defensive action in state court." Bryfogle, 666 F. Supp. at 733. Removing defendants also make a persuasive argument that were the court to find that a defendant who engages in ADR or settlement discussions waived his right to remove, this decision would discourage defendants from engaging in those activities. This result would clearly go against public policy favoring settlement.

The participation of removing defendants in discussions about a "binding high/low nonjury trial" does not constitute a "clear and unequivocal" waiver of their right to remove.

### 4.     Removing defendants' related state claims

Plaintiffs argue that remand is appropriate here, because there is a related action pending before the state court. The related action involves property damage claims with respect to the vehicles involved in the accident. The property damage claims were initially brought by plaintiffs. The removing defendants, Harris and Getaway Tours, filed a counterclaim in that action. (ECF No. 5 ¶34). Plaintiffs contend that the personal

injury claims and the property damage claims are essentially part of the same state court action, and the personal injury action should be remanded due to the difficulties and inefficiencies of litigating what is, in essence, one action in two forums.

Plaintiffs point to <u>Bryfogle</u> to support their contention that a federal action should be remanded when it is in essence part of a state court action. This argument is an overly broad interpretation of <u>Bryfogle</u>, which focused not on whether the actions in question were related, but whether the federal claim was *ancillary* to the state claim. <u>Bryfogle v. Carvel Corp.</u>, 666 F. Supp. 730, 732 (E.D. Pa. 1987); *see* <u>Connecticut Bank of Commerce v. Republic of Congo</u>, 440 F. Supp. 2d 346, 350 (D. Del. 2006) (quoting <u>Richmond v. Allstate Ins. Co.</u>, 624 F.Supp. 235, 236 (E.D.Pa.1985)) ("'A suit which is merely ancillary or supplemental to another action cannot be removed from state to federal court.'").

The pertinent question here is whether the claim currently before the state court for property damages is ancillary to the personal injury claim. In <u>International Organization Masters</u>, the district court opined that there are "no useful working definitions of 'ancillary.'" <u>Int'l Org. Masters, Mates & Pilots of Am., Local No. 2 v. Int'l Org. Masters, Mates & Pilots of Am., Inc.</u> 342 F. Supp. 212, 214 (E.D. Pa. 1972). The Third Circuit Court of Appeals has not addressed this matter, and district courts within this circuit vary with respect to the analysis they use for determining if a matter is ancillary. <u>Connecticut Bank of Commerce v. The Republic of Congo</u>, <u>440 F.Supp.2d 346 (D.Del.2006)</u> (providing a survey of Third Circuit district court decisions that address whether a matter is ancillary).

That being said, <u>International Organization Masters</u>, which both plaintiffs and removing defendants cited in their briefs, provides helpful guidance on this question. According to <u>International Organization Masters</u>, for a case to be removable "[i]t must be 'practically severable,' so as not to do 'practical violence.' . . . The mere fact that a controversy had its origin in a state action does not require remand; the issue is whether it is a 'separate suit.'" <u>Int'l Org. Masters, Mates & Pilots of Am., Local No. 2</u>, 342 F. Supp. at 214. The question of "practical violence" "relates to the state court's power to fashion a remedy for the wrong committed against the plaintiffs." <u>Id</u>. at 215.

Here, it does not appear that separating the cases involving personal injury and property damage claims will cause the sort of "practical violence" envisioned by <u>International Organization Masters</u>. The state court will retain the power to fashion a remedy to address the property damage claims even if the personal injury case is removed to federal court. In fact, this matter is substantively distinct from most of the cases in which the court examined whether a claim is ancillary, as the majority of those cases involved garnishment actions. *See* <u>Id</u>.; <u>Connecticut Bank</u>, 440 F. Supp. 2d at 352; <u>Scanlin v. Utica First Ins. Co.</u>, 426 F. Supp. 2d 243, 245 (M.D. Pa. 2006); <u>Haines by Midlantic Bank, N.A. v. Donn's, Inc.</u>, No. CIV. A. 95-1025, 1995 WL 262534, at *1 (E.D. Pa. Apr. 27, 1995); <u>Lexington Ins. Co. v. Trustees of Univ. of Pa.</u>, Civ. Court No. A 85-1125, 1987 WL 16041, at *1 (E.D. Pa. Aug. 21, 1987); <u>Richmond v. Allstate Ins. Co.</u>, 624 F. Supp. 235 (E.D. Pa. 1985), <u>writ denied,</u> 800 F.2d 1130 (3d Cir. 1986).

The personal injury claims and the property damage claims arising from the accident on December 26, 2013, are currently being addressed as separate suits, and plaintiffs provided no evidence to support their contention that the state court will

consolidate these actions sua sponte if this court remands. Given that these claims are currently proceeding as independent actions, it does not appear that removing the personal injury claims to federal court would cause practical violence or "'gratuitous[ly] interfere[ ] with the orderly and comprehensive disposition of a state court litigation.'" Lexington, 1987 WL 16041, at *1 (quoting Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942)). The court will not remand this case based upon plaintiffs' argument that the personal injury claim is related or ancillary to the property damages claim currently pending in state court.

### 5. Delay and expense

Plaintiffs argue that this case should be remanded because the parties have already committed significant time and expense to the state court litigation. Plaintiffs also anticipate that this case will be set for trial more quickly at the state court level.

> Although the Court is mindful of the[] critical principles [of judicial economy and cooperative federalism], the executive and legislative branches have enacted statutes articulating the standards to be used in determining whether a defendant may remove a particular case to federal court. In particular, 28 U.S.C. §§ 1441, 1446-47 describe the procedures by which a defendant may remove a case to federal court. [Where defendant] complie[s] with the statutory requirements for removal, [] this Court will not remand the case on the basis of principles of judicial economy and cooperative federalism.

Cook, 2008 WL 4606305, at *3; see Jim Arnold Corp. v. Hydrotech Sys., Inc., 109 F.3d 1567, 1572 (Fed.Cir.1997) ("[C]onsiderations of judicial economy cannot trump a clear rule of law, particularly one that goes to the very power of the court to decide the case."). 28 U.S.C. § 1446(b) lays out clear requirements with respect to the right to remove this case. The court will not place judicial economy and fear of delay above these requirements.

### 6. Summary

For the reasons set forth above, removing defendants did not waive their right to remove. Because this court could not conclude that removing defendants waived their right to remove, the court will address the question whether removing defendants' notice of removal was timely filed under 28 U.S.C. § 1446(b).

### B. Timeliness of removing defendants' notice of removal

Plaintiffs argue that this case is not removable because removing defendants did not file the notice of removal within the required thirty-day time limit. The time limitation for removal in a case where the initial pleading is not removable is controlled by 28 U.S.C. § 1446(b), which provides:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or **other paper** from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b) (emphasis added). [6] The thirty-day time limit is mandatory. Carlyle Inv. Mgmt. v. Moonmouth Co. SA, 779 F.3d 214, 218 (3d Cir. 2015); Groh v. Groh, 889 F.Supp. 166, 171 (D.N.J. 1995); Balestrieri v. Bell Asbestos Mines, Ltd., 544 F.Supp 528, 529 (E.D. Pa. 1982). The goal of the time-limit provision is to resolve early  in which court system the case will be heard. 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3731 (4th ed. 2016).

---

[6] Because plaintiffs raised no federal question in the complaint and the originally named defendant Conley-Beaver was a nondiverse party, the action was not initially removable. Therefore, the second paragraph of § 1446(b) governs.

Here, plaintiffs and removing defendants agree that email correspondence sent on May 18, 2016, and May 23, 2016, stated Conley-Beaver was to be dismissed as a defendant; the parties disagree, however, about whether this correspondence triggered the thirty-day removal period provided under 28 U.S.C. § 1446(b).

The court's inquiry into this matter is twofold. The court must first decide whether the attorney correspondence on May 18, 2016, and May 23, 2016, can be considered "other paper," under 28 U.S.C. § 1446(b). If the court determines that 28 U.S.C. § 1446(b) includes this attorney correspondence, the court must determine whether removing defendants may have ascertained from this correspondence that the case had become removable. *See* Rose v. USAA Cas. Ins. Co., Civ. Action No. 09-6005, 2010 WL 2557484, at *3–4 (D.N.J. June 23, 2010); Polk v. Sentry Ins., 129 F. Supp. 2d 975, 978 (S.D. Miss. 2000).

Although the Third Circuit Court of Appeals has not specifically defined "other paper," "district courts in the Third Circuit have given the term an 'embracive construction' to include a wide array of documents, including letter communications between counsel, deposition testimony, stipulations between the parties, answers to interrogatories, and transcripts." Costa v. Verizon New Jersey, Inc., 936 F. Supp. 2d 455, 465–66 (D.N.J. 2013); *see* 14C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3731 (4th ed. 2016). ("The federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope.").

Several district courts within the Third Circuit have specifically held that written correspondence between counsel can constitute "other paper" under 28 U.S.C.

§ 1446(b). <u>Rose</u>, 2010 WL 2557484, at *4 (finding that a stipulation substituting a defendant, signed and mailed by the plaintiffs' attorney, constituted an "other paper" within the meaning of § 1446(b)); <u>Efford v. Milam</u>, 368 F.Supp.2d 380, 385 (E.D.Pa.2005) (concluding that correspondence from the plaintiffs' counsel fell within the purview of "other paper."); <u>Rahwar v. Nootz</u>, 863 F. Supp. 191, 192 (D.N.J. 1994) ("plaintiff's statement of damages letter is an 'other paper' within the meaning of 28 U.S.C. § 1446(b)."); <u>Broderick v. Dellasandro</u>, 859 F.Supp. 176, 179 (E.D.Pa.1994) (finding that a letter from the plaintiffs' counsel indicating that the plaintiffs had changed residency provided the defendant with notice that the case had become removable); <u>Hessler v. Armstrong World Indus., Inc.</u>, 684 F. Supp. 393, 395 (D. Del. 1988) (finding that letters and statements made by the plaintiffs' attorney, which provided adequate notice that the plaintiff had settled with the nondiverse defendant, triggered the thirty-day removal period). It is clear that attorney correspondence can be considered "other paper" for the purpose of 28 U.S.C. § 1446(b).

Having concluded that the email correspondence between counsel can constitute "other paper," the court must examine the substance of this correspondence in order to determine when removing defendants may have first ascertained that the case had become removable. In discussing "other papers," courts within this circuit "have held that such documents trigger [28 U.S.C. § 1446(b)'s] thirty-day removal period only when they are the result of *'a voluntary act of the plaintiff* which effects a change rendering a case subject to removal (by defendant) which had not been removable before the change.'" <u>Efford</u>, 368 F. Supp. 2d at 385 (citing <u>DeBry v. Transamerica Corp.</u>, 601 F.2d

480, 487 (10th Cir.1979)); *see* <u>Costa</u>, 936 F. Supp. 2d at 466; <u>Rose</u>, 2010 WL 2557484, at *4.

"In addition, these courts have read [28 U.S.C. § 1446(b)'s] use of the word 'ascertain' to mean that the thirty-day removal period is triggered only when these documents make it 'unequivocally clear and certain' that federal jurisdiction lies." <u>Efford</u>, 368 F. Supp. 2d at 385 (citing <u>Bosky v. Kroger Tex., L.P.</u>, 288 F.3d 208, 212 (5th Cir.2002)); <u>In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.</u>, Civ. Action No. 98-20560, 1999 WL 106887, at *2 (E.D. Pa. Mar. 2, 1999) ("courts have held that an action was properly removed to a federal court where the plaintiff clearly expressed an intent to voluntarily abandon claims against nondiverse defendants."); <u>Polk</u>, 129 F. Supp. 2d at 979–80 (citing <u>Pullman Co. v. Jenkins</u>, 305 U.S. 534 (1939), for the proposition that "notice must clearly and definitively evidence the plaintiff's desire voluntarily to dismiss any nondiverse defendants.").

For attorney correspondence to trigger the thirty-day removal period, the correspondence must show that the plaintiff engaged in a voluntary act which rendered the case subject to removal, and that the act was "unequivocally clear and certain" from the correspondence. If plaintiffs engaged in such an act, the time at which that act became clear to removing defendants will "trigger" the thirty-day removal period under 28 U.S.C. § 1446(b).

Here, the act in question is the discontinuance by plaintiffs of defendant Conley-Beaver. "[C]ourts have held that an action was properly removed to a federal court where the plaintiff clearly expressed an intent to voluntarily abandon claims against nondiverse defendants." <u>In re Diet Drugs</u>, 1999 WL 106887, at *2; *see* <u>Rose</u>, 2010 WL

2557484, at *4 (finding that the plaintiffs' stipulation substituting a nondiverse defendant for a diverse defendant constituted a voluntary abandonment of claims against the removing defendant); Eyal Lior v. Sit, 913 F. Supp. 868, 878 (D.N.J. 1996) (finding that the plaintiffs' stipulation removing the nondiverse defendant triggered the thirty-day removal period under 28 U.S.C. §1446 (b)); Hessler, 684 F. Supp. at 395 (holding that the plaintiff's act of entering into a settlement agreement with the nondiverse defendant constituted the voluntary abandonment of claims against the nondiverse defendant); Lesher v. Andreozzi, 647 F.Supp. 920, 921–22 (M.D.Pa.1986) (same). Here, the discontinuance by plaintiffs of defendant Conley-Beaver was a voluntary act indicating plaintiffs' intent to abandon claims against the only nondiverse defendant. This discontinuance rendered the case subject to removal.

Given that the discontinuance created diversity jurisdiction and made this matter removable, the court must determine when plaintiffs' voluntary act of dismissing Conley-Beaver became "unequivocally clear and certain" to removing defendants, such that removing defendants could first ascertain that the case had become removable. There are four different papers identified by the parties that could have first indicated to removing defendants that the case was removable. These are:

1. the two emails sent by counsel for removing defendants and counsel for defendant Conley-Beaver on May 18, 2016, which confirm that all defendants consented to the discontinuance of Conley-Beaver (ECF No. 5-20);

2. the letter sent by counsel for plaintiffs on May 23, 2016, which contained the unsigned stipulation for discontinuance with respect to defendant Conley-Beaver (ECF. No. 5-21);

3. correspondence sent by counsel for Conley-Beaver and counsel for plaintiffs on May 31, 2016, which contained signed counterparts of the

stipulation for discontinuance with respect to defendant Conley-Beaver (ECF. No. 5-22); and

4. a letter sent by counsel for plaintiffs on June 15, 2016, which confirmed that the stipulation for discontinuance was filed with the Court of Common Pleas of Beaver County on June 15, 2016 and included a copy of that filing.

Plaintiffs point to the May 18th email exchange as evidence that removing defendants were made aware that the only nondiverse party was being dismissed on that date and that, consequently, the May 18th correspondence triggered the thirty-day removal period under 28 U.S.C. § 1446(b). Plaintiffs argue that removing defendants had until June 17, 2016, to file their notice of removal, and that the notice of removal filed on June 28, 2016, was untimely.

In the alternative, plaintiffs argue that the May 23rd letter confirmed in writing that there were no remaining nondiverse defendants in this action. Plaintiffs' counsel sent this letter to all defendants and included in it an unsigned stipulation for discontinuance with respect to defendant Conley-Beaver. Based upon this communication, counsel for plaintiffs argues that the thirty-day removal period began on May 23, 2016, removing defendants had until June 22, 2016, to file their notice of removal, and removing defendants' notice of removal, filed on June 28, 2016, was untimely.

Conversely, removing defendants argue that the removal period did not begin until June 15, 2016, when the stipulation for discontinuance was filed with the court and Conley-Beaver was formally dismissed as a defendant, or in the alternative, on May 31, 2016, when all parties signed the stipulation for discontinuance. Counsel for Harris and Getaway Tours argue that because the removal period was not triggered until either

June 15, 2016 or May 31, 2016, their notice of removal, filed on June 28, 2016, was filed within the thirty-day removal period.

### 1. May 18, 2016 emails

For the May 18, 2016 email exchange between defendant Conley-Beaver and removing defendants Harris and Getaway Tours to serve as the triggering event for the thirty-day removal period, it must have been "unequivocally clear and certain" from this correspondence that the case had become removable.

The May 18, 2016 email exchange discusses the discontinuance of Conley-Beaver. The email exchange includes two emails – an initial email sent from Timothy Montgomery, counsel for Harris and Getaway Tours, and a response email sent from William Mansour, counsel for Conley-Beaver. While, Laura Tocci, counsel for plaintiffs, was mentioned in Mr. Montgomery's email and was copied on both Mr. Montgomery's and Mr. Mansour's emails, plaintiffs' counsel neither engaged in nor responded to this email exchange. Plaintiffs state in their brief in support of their motion to remand, that on May 17, 2016, counsel for plaintiffs orally informed counsel for Conley-Beaver that plaintiffs intended to dismiss Conley-Beaver from this action upon consent of Harris and Getaway Tours (ECF No. 6); however, no evidence was provided indicating that plaintiffs relayed this information, either in writing or otherwise, to Harris and Getaway Tours at that time.

While the email exchange mentions removing defendants' "understanding" that plaintiffs had agreed to dismiss Conley-Beaver, plaintiffs did not confirm this fact in the May 18th email exchange. In fact, the exchange contains no information from plaintiffs

whatsoever; it merely discusses an oral agreement between defendant Conley-Beaver and plaintiffs, which plaintiffs neither confirmed nor denied.

While counsel for plaintiffs may have made this decision unequivocally clear and certain during the May 17th phone call, courts typically require "that an 'other paper' under 28 U.S.C. § 1446(b) consist of a written document." Cabibbo v. Einstein/Noah Bagel Partners, L.P., 181 F. Supp. 2d 428, 431 (E.D. Pa. 2002); *see* State Farm Fire & Cas. Co. v. Valspar Corp., 824 F. Supp. 2d 923, 936 (D.S.D. 2010) (finding that oral communication is typically insufficient to constitute "other paper" and trigger the thirty-day statutory removal period); Entrekin v. Fisher Scientific Inc., 146 F.Supp.2d 594, 612 (D.N.J.2001) (holding that oral communications, "made in an informal setting without any transcription or simultaneous reduction to written form about such a matter as settlement negotiations, are incapable of triggering the thirty-day limitation for removal"); 14B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3731 (4th ed. 2009) ("Courts ordinarily hold that oral statements do not trigger removability under the second paragraph of Section 1446(b) because such statements do not qualify as an 'other paper.'").

Given that plaintiffs neither sent not affirmed in writing the content of the May 18th emails, this court cannot conclude that this correspondence makes it "unequivocally clear and certain" that the case had become removable. As a result, the May 18th emails did not trigger the thirty-day removal period under 28 U.S.C. § 1446(b).


**2.    May 23, 2016 letter**

The court next examines whether the letter plaintiffs' counsel sent to all defendants on May 23, 2016, which included an unsigned stipulation for discontinuance with respect to Conley-Beaver, made it "unequivocally clear and certain" to Harris and Getaway Tours that the case had become removable. Unlike the May 18th emails, the correspondence on May 23, 2016, included written confirmation from plaintiffs that Conley-Beaver was being dismissed from the case. The only question is whether the removing defendants could have ascertained through an unsigned, unfiled stipulation that the matter had become removable.

In Hessler v. Armstrong World Industries, Inc., 684 F. Supp. 393, 393 (D. Del. 1988), the court had to determine whether an informal settlement agreement with the nondiverse defendant placed the diverse defendants on notice that the case was removable and, thus, triggered the thirty-day removal period. The court held that the settlement agreement did not need to be formalized or presented to the court to commence the removal period, because "formal discontinuance is not a prerequisite for removability" Id. at 395 (citing Lesher v. Andreozzi, 647 F.Supp. 920, 921 (M.D.Pa.1986)); rather, the court determined that the case became removable when the diverse party "received adequate notice, both by letters and by statements made in the Superior Court . . . that the requisites of removability were present." Id. at 395.

The Hessler decision seems to suggest that an informal – i.e. unsigned and unfiled – agreement can serve as the triggering event under 28 U.S.C. § 1446(b). Other district court decisions support this finding. See Rawlings v. Prater, 981 F.Supp. 988, 990 (S.D.Miss.1997) (holding that removal was proper where the plaintiffs voluntarily abandoned their claims against a nondiverse defendant by entering into a settlement

agreement, even though release document had not yet been finalized); Mancari v. AC & S Co., 683 F. Supp. 91, 93 (D. Del. 1988) ("It is not required that discontinuance of the nondiverse defendants be in writing or be formalized."); Rowe v. Johns-Manville, Civ. Action No. A. 86-6044, 1987 WL 12266, at *2 (E.D. Pa. June 9, 1987) ("any unequivocal indication of plaintiff's abandonment of its action against settling defendants is sufficient to effect discontinuance, and a formal written stipulation to that effect is not required."); Lesher, 647 F. Supp. at 921 ("We are unpersuaded by plaintiffs' argument that the [nondiverse] defendants must be formally dismissed from this action before removal is permissible.").

These decisions differ from the matter at hand, however, in one significant manner. These decisions each involved informal *settlement agreements*, whereas the instant matter involves an informal *stipulation of discontinuance*. The court must, therefore, determine whether an unsigned stipulation is analogous to an informal settlement agreement for purposes of commencing the thirty-day removal period under 28 U.S.C. § 1446(b).

Removing defendants argue that an unsigned, unfiled stipulation is not similar to a settlement agreement because such a stipulation is not binding under state law, and that consequently it does not make the case removable and cannot serve as the triggering event under 28 U.S.C. § 1446(b). Removing defendants contend that had they filed a notice of removal prior to the filing of the stipulation on June 15, 2016, "it is likely that Plaintiffs would have moved to remand as there was not complete diversity." (ECF No. 11).

Removing defendants rely heavily on <u>First Star Savings Bank v. American Title Insurance Co.</u>, Civ. Action No. 94-3716, 1994 WL 475273 (E.D. Pa. Aug. 29, 1994), to support their argument. <u>First Star</u>, however, is highly problematic. Like the instant matter, <u>First Star</u> involved a removing defendant who filed a notice of removal after learning from the plaintiff's counsel that the plaintiff intended to consent to the dismissal of the only nondiverse defendant. The removing defendant was in receipt of this information via a letter from the plaintiff's counsel on or about June 8, 1994. <u>First Star</u>, 1994 WL 475273, at *2. The removing defendant filed for removal on June 16, 1994, before the stipulation was signed or filed. <u>Id</u>. While the parties disagreed about the timeliness of the defendant's removal with respect to whether the letter from plaintiff's counsel triggered the thirty-day removal period, the court did not resolve the dispute on that basis. <u>Id</u>. at n.5. Instead, the court found that because the nondiverse party had not yet been formally dismissed from the action, there was no diversity of citizenship; consequently, the court remanded due to lack of subject-matter jurisdiction. <u>Id</u>. at 3.

To support its finding that the state court action had not yet become removable, the court relied on <u>Hutton v. Temple University</u>, 703 F. Supp. 391 (E.D. Pa. 1989), for the proposition that "the record of the state court is considered the sole source from which to ascertain whether a case originally not removable has become removable." <u>Id</u>. (citing <u>Hutton</u>, 703 F. Supp. at 392). Based on this directive from <u>Hutton</u>, the district court examined the state court record, found that the parties had not signed and filed the stipulation, and determined that diversity jurisdiction did not exist. <u>Id</u>.

The reliance of the court in <u>First Star</u> on <u>Hutton</u>, however, is misplaced. In support of its statement that "the state court is considered the sole source from which to

ascertain whether a case originally not removable has become removable" the court in

Hutton cited Bandag of Springfield, Inc. v. Bandag Inc., 537 F. Supp. 366 (W.D. Mo.

1981).[7] In Bandag, the district court remanded a case on the ground that the nondiverse

defendants had never been dismissed and that, consequently, there was no diversity

jurisdiction. Bandag, 537 F. Supp. at 368. The court stated that it determined that the

nondiverse party had not been dismissed "[f]rom the records supplied to the Court." Id.

While it is clear from the court's opinion that it relied on state court records to decide

removability, it does not follow that the decision to use state court records to make this

decision means that state court records are the *only* source a federal court can consider

when deciding whether a case has become removable. This inference is improperly

drawn by the court in Hutton, and the court in First Star mistakenly adopted and relied

upon it. In addition to being flawed due to the improper inferences drawn from the case

law, this inference is also in direct conflict with the myriad of decisions that have found

that 28 U.S.C. § 1446(b) can be triggered by "other papers" not filed in the state court

proceedings. A.S. ex rel. Miller v. SmithKline Beecham Corp., 769 F.3d 204, 210–211 (3d

Cir. 2014) (triggering of 28 U.S.C. § 1446(b) based upon an order in another case); Akin

v. Ashland Chem. Co., 156 F.3d 1030, 1035–1036, 1035 n.2 (10th Cir. 1998) (triggering

based upon an answer to interrogatory); Efford, 368 F.Supp.2d at 385 (triggering based

upon attorney correspondence); Rahwar, 863 F. Supp. at 192 (triggering based upon

"statement of damages" letter); Broderick, 859 F.Supp. at 179 (triggering based upon

---

[7] The court in Hutton cited Moore's Federal Practice ¶ 0.168 [3.−5−6] at 599 (2d ed. 1996). While this section of Moore's Federal Practice in its second edition did reference that the state court record is the sole source from which to ascertain whether a case has become removable, this reference does not appear in the most recent edition of Moore's Federal Practice. *See* 16-107 Moore's Federal Practice - Civil § 107.140 (3d ed. 2016).

letter indicating change of residency); <u>Hessler</u>, 684 F. Supp. at 395 (triggering based upon informal settlement). Given that the majority of courts in and outside of the Third Circuit seem to reject the <u>First Star's</u> basic presumption that district courts cannot look outside the state court record to ascertain whether a case has become removable, this court is unpersuaded by the reasoning and holding in <u>First Star</u>.

While the case law is not perfectly clear about whether an unsigned stipulation can trigger the thirty-day removal period under 28 U.S.C. § 1446(b), this court finds two decisions particularly instructive – <u>Eyal Lior v. Sit</u>, 913 F. Supp. 868 (D.N.J. 1996), and <u>King v. Bell & Howell Mail Processing Systems Co.</u>, Civ. Action No. 97-1303, 1997 WL 285969 (N.D. Ill. Apr. 24, 1997). In <u>Eyal Lior</u> the district court found that an unsigned stipulation of dismissal triggered the thirty-day removal period under 28 U.S.C. § 1446(b). In <u>Eyal Lior</u>, the removing defendants received an unsigned copy of a stipulation dismissing all claims against the nondiverse defendant via facsimile on November 10, 1995. <u>Eyal Lior</u>, 913 F. Supp. at 877. On November 23, 1995, counsel for the defendants signed the stipulation. On November 28, 1995, counsel for the plaintiffs signed the stipulation and filed it with the court. <u>Id</u> at 873. The removing defendants filed their original removal petition on November 28, 1995, and filed an amended removal petition on December 14, 1995. <u>Id</u>. at 873, 878. The removing defendants argued that the matter did not become removable until the stipulation was filed on November 28, 1995. The court rejected this argument, finding instead that the case became removable on November 10, 1995, when the removing defendants received the unsigned copy of the stipulation, and that consequently the thirty-day removal period began on that date. <u>Id</u>. at 878. While the court's decision in <u>Eyal Lior</u> suggests that a

stipulation – like a settlement agreement – need not be signed or reduced to its final terms to trigger the removal period under 28 U.S.C. § 1446(b), the court did not fully explain the reasoning behind this decision. It is somewhat unclear as to why or how the court in <u>Eyal Lior</u> determined that an unsigned stipulation enabled the removing defendant to ascertain that the case had become removable.

While <u>Eyal Lior</u> offers some guidance, the court finds the district court's decision in <u>King v. Bell & Howell Mail Processing Systems Co.</u> particularly persuasive. In <u>King</u>, the plaintiff originally filed a case against Bell and Howell Company ("Bell and Howell"). <u>King</u>, 1997 WL 285969 at *1. The plaintiff later learned that the appropriate defendant was Bell and Howell Mail Processing Systems Company ("Bell and Howell Mail"). <u>Id</u>. Bell and Howell filed a motion to dismiss on December 20, 1996, which the plaintiff did not oppose, and on January 6, 1997, the plaintiff was granted leave to amend her complaint to add Bell and Howell Mail as a defendant. On January 29, 1997, Bell and Howell's motion to dismiss was granted, leaving Bell and Howell Mail as the sole defendant. On February 25, 1997, Bell and Howell Mail filed a notice for removal based on diversity. <u>Id</u>. The court in <u>King</u> was tasked with determining whether the thirty-day removal period began on January 6, 1997, when Bell and Howell Mail was joined to the case knowing that Bell and Howell's pending motion to dismiss was unopposed or whether the removal period began on January 26, 1997, when Bell and Howell was formally dismissed. <u>Id</u>. at *2.

The court acknowledged that the law in this area is "not fully consistent, but the majority have held that the time period begins to run once the removing party gains knowledge of the facts supporting removal, not when a pertinent order or pleading is

subsequently entered or filed." Id. at *3. The court also recognized that 28 U.S.C. § 1446(b) does not require formality or limit federal courts to the "technical procedural rules of state courts." Id. at *3–4. Based upon this reasoning, the court in King decided that "Bell & Howell Mail could first ascertain that the case would be removable when informed by plaintiff's counsel that Bell & Howell Mail would be added as a party and that the dismissal of Bell & Howell would not be opposed," and that "[s]ince the notice of removal was not filed until more than 30 days after the amended complaint adding Bell & Howell Mail, the notice of removal was untimely." King, 1997 WL 285969, at *4.

Like in King, which involved an unopposed motion, this case involves an unopposed stipulation to discontinue. Here, removing defendants received written confirmation from all parties on or before May 23, 2016, that plaintiffs would be dismissing Conley-Beaver and that all parties consented to this stipulation. While this stipulation was not formal and may not have been perfected under state rules, this court concludes under the reasoning set forth in King that removing defendants could ascertain on May 23, 2016, that the case had become removable through plaintiffs' written expression of intent to voluntarily dismiss the nondiverse defendant. As made clear in Hessler and King, neither formality nor perfect compliance with state procedural practices is required to trigger the thirty-day removal period under 28 U.S.C. § 1446(b). See Johnson v. Allison, No. 3:12-CV-0041, 2012 WL 2061462, at *4 (M.D. Pa. June 7, 2012) (quoting Tyler v. Prudential Ins. Co. of Am., 524 F. Supp. 1211, 1213 (W.D. Pa. 1981)) ("The fact that 'service under state service practice has not been perfected does not in and of itself prevent removal.'"); Lesher by Lesher v. Andreozzi, 647 F. Supp. 920, 921 (M.D. Pa. 1986) ("'Even if the parties were found not to have perfected a

discontinuance under state court procedure, this Court determines plaintiffs' counsel's [action] established the prerequisites for removal diversity jurisdiction under 28 U.S.C. 1441(b).'") (quoting Heniford v. American Motors Sales Corp., 471 F.Supp. 328 (D. S.C.1979)); Erdey v. Am. Honda Co., 96 F.R.D. 593, 599 (M.D. La.), on reconsideration in part, 558 F. Supp. 105 (M.D. La. 1983) ("Where plaintiff, by his voluntary act has definitely indicated his intention to discontinue the action as to the nondiverse defendant . . . the case then becomes removable under 28 U.S.C. § 1446(b). The technicality of how plaintiff's intention is expressed is of no moment—it is the expression of the intent by plaintiff which makes the case removable.") (citations omitted).

While the stipulation itself may not have been signed by all the parties on May 23, 2016,[8] even absent such perfection the unsigned stipulation put removing

---

[8] The court need not examine when the parties "perfected" their stipulation of discontinuance with respect to Conley-Beaver, because perfect compliance under state procedural rules is not necessary to trigger 28 U.S.C. § 1446(b). Johnson, 2012 WL 2061462, at *4; King, 1997 WL 285969 at *3–4; Lesher, 647 F. Supp. at 921. Here, it appears likely that a state court would have found that plaintiffs complied with the Pennsylvania Rules of Civil Procedure on or before May 23, 2016, thus making the discontinuance of Conley-Beaver enforceable. In Pennsylvania, voluntary discontinuances are governed by the Pennsylvania Rules of Civil Procedure. Pa.R.C.P. 229(a) ("A discontinuance shall be the exclusive method of voluntary termination of an action, in whole or in part, by the plaintiff before commencement of the trial."). Pennsylvania Rule of Civil Procedure 229(b)(1) states that "a discontinuance may not be entered as to less than all defendants except upon the written consent of all parties or leave of court upon motion of any plaintiff or any defendant for whom plaintiff has stipulated in writing to the discontinuance." Pa.R.C.P. 229(b)(1). A discontinuance against less than all defendants, therefore, requires either the written consent of all parties or an order of the court. It does not require both. See Toney v. Chester Cty. Hosp., 961 A.2d 192, 197 (Pa. Super. 2008), aff'd, 36 A.3d 83 (Pa. 2011) ("[i]n the absence of consent by all parties, leave of court was required to effectuate the discontinuance."); Hileman v. Morelli, 605 A.2d 377, 381 (Pa. Super. 1992) (finding that a court could enter a discontinuance against less than all defendants upon leave of court, even without a written petition or the consent of all parties).

All parties agree that as of May 23, 2016, the stipulation for discontinuance with respect to defendant Conley-Beaver was informal, insomuch as it had not yet been filed. By its plain language, however, Rule 229 allows for the discontinuance of a party upon the written consent

defendants on notice that the case had become removable. Because each party received

written confirmation, on or before May 23, 2016, indicating that all the other parties

---

of all parties – *not* the filing of this consent. While neither party presented, and this court is not aware of, a Pennsylvania state court decision in which a party attempted to enforce an informal discontinuance, removing defendants analogize this case to <u>Vetenshtein ex rel. Vetenshtein v. City of Philadelphia</u>, 755 A.2d 62 (Pa. Commw. Ct. 2000), wherein a defendant attempted to enforce an informal amendment to a pleading. In <u>Vetenshtein</u>, the plaintiff's original complaint included both federal claims and common law tort claims. <u>Id</u>. at 64. After the plaintiff became aware that the defendant intended to remove the case to federal court based upon the federal claims, plaintiff orally agreed not to pursue these claims in order to avoid the possibility of removal. <u>Id</u>. The plaintiff sent a letter to the defendant confirming this agreement. <u>Id</u>. When the plaintiff later attempted to revive the federal claims, the court held that the plaintiff's letter did not discontinue the federal claims, because the letter did not follow the Pennsylvania Rules of Civil Procedure. Specifically, the court held that the letter attempted to amend the pleadings without complying with the requirements of Pennsylvania Rule of Civil Procedure 1033, which sets forth the exclusive method for amending pleadings. <u>Id</u>. at 66.

Removing defendants argue that Pennsylvania Rule of Civil Procedure 1033 is analogous to Pennsylvania Rule of Civil Procedure 229(b)(1), because "[Pa.R.C.P] 1033, like Pa.R.C.P [] 229, requires that a party may amend a pleading to add or delete a new cause of action or party, only by filed consent of the adverse party or leave of court." (ECF No. 15 n.2.) This comparison, however, overlooks a crucial difference between these rules. Rule 1033 allows a party to amend its pleading "either by *filed* consent of the adverse party or by leave of court." Pa.R.C.P. 1033. Rule 229, on the other hand, allows a party to discontinue an action with respect to less than all defendants either by "*written* consent of all parties or leave of court." Pa.R.C.P. 229(b)(1). While Rule 1033 explicitly requires that consent be filed with the court, Rule 229 sets out no such requirement. In fact, this difference in phrasing shows that the legislature had the capacity and know-how to adopt a procedural rule requiring that consent be filed with the court, but that instead the legislature chose to adopt a more lenient standard with respect to discontinuances, requiring merely that consent to a discontinuance be in writing, rather than requiring that parties file the consent with the court.

As of May 23, 2016, all parties had provided written consent to the discontinuance of Conley-Beaver. On May 18, 2016 counsel for Conley-Beaver and counsel for Harris and Getaway Tours sent emails to all parties evincing a clear intent to consent to the discontinuance. <u>Koleski v. Park</u>, 525 A.2d 405, 407 (Pa. Super. Ct. 1987) ("Stipulations are interpreted according to the intent of the parties."). On May 23, 2016, plaintiffs responded by sending a proposed stipulation and cover letter evincing their intent to discontinue the action with respect to Conley-Beaver. The language of Rule 229 does not require that the parties sign the stipulation itself. The Rule establishes no requirements with respect to the form of this consent, beyond that it be in writing and that it come from all parties. *See* Pa.R.C.P. 229(b)(1). Because all parties provided the written consent to the stipulation of discontinuance on or before May 23, 2016, as required under Rule 229(b)(1), the stipulation of discontinuance became enforceable on that day. Even were the parties required to perfectly comply with technical state procedural rules in order to trigger § 1446(b), it is likely that plaintiffs complied with these procedures on May 23, 2016. This conclusion is further supported by the well-established rule that "all doubts should be resolved in favor of remand." <u>Steel Valley Auth.</u>, 809 F.2d at 1010.

were consenting to the discontinuance of Conley-Beaver, removing defendants' receipt of the unsigned stipulation triggered the thirty-day removal period under 28 U.S.C. § 1446(b). Harris and Getaway Tours had thirty days from May 23, 2016 – that is, until June 22, 2016 – to file their notice of removal. Harris and Getaway Tours filed their notice of removal on June 28, 2016. This notice of removal was filed outside the thirty-day removal period and is untimely. Consequently, plaintiffs' motion to remand must be granted.

## V. Conclusion

For the reasons set forth above, while the court does not find that any of the actions removing defendants took in state court, including filing a cross-claim at the outset of litigation, engaging in limited discovery prior to filing for removal, participating in ADR, and continuing to pursue related, though non-ancillary state claims, constituted a waiver of their removal rights, the court must remand on the basis that removing defendants filed an untimely notice of removal. Plaintiffs' motion is, therefore, granted.

An appropriate order will be entered.


Dated: December 22, 2016                                  /s/ Joy Flowers Conti
                                                         Joy Flowers Conti
                                                         Chief United States District Judge